# IN THE COURT OF APPEALS OF IOWA

No. 17-1360
Filed January 9, 2019

**KELLY KOHRS-MANRIQUES,**
    Plaintiff-Appellant,

**vs.**

**TAMELIA BROWN and LOWELL BENCE,**
    Defendants-Appellees.
_____

Appeal from the Iowa District Court for Madison County, Bradley McCall, Judge.

Plaintiff appeals the district court's dismissal of fraudulent conveyance claim. **AFFIRMED.**

Shane Michael of Michael Law Firm, West Des Moines, for appellant.

Thomas T. Tarbox of Law Office of Thomas T. Tarbox, PC, Des Moines, for appellee Bence.

Tamelia Brown, Truro, pro se.

Considered by Vogel, P.J., Tabor, J., and Danilson, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**VOGEL, Presiding Judge.**

Kelly Kohrs-Manriques brought suit against Tamelia Brown, as owner of a tavern, and Lowell Bence, as mortgagor of the property. Kohrs-Manriques claimed Brown's transfer of the property to Bence was a fraudulent conveyance, designed to place the property out of her reach as a judgment creditor. The district court considered the factors of a fraudulent conveyance and found Kohrs-Manriques did not establish, by clear and convincing evidence, the transfer was fraudulent. We agree and affirm.

## I. Background Facts and Proceedings

In February 2007, Brown purchased the property from Truro Tavern, Inc., for $40,000. She received a $45,000 loan from Bence;[1] $40,000 was to purchase the property and $5000 was for operating costs. On February 26, 2007, Brown's mortgage instrument to Bence was filed, securing a loan for $45,000. In addition to the initial loan, Brown testified Bence provided continuous financial assistance over the years by paying taxes, insurance fees, and repair costs, which she was not able to pay. She also testified she made monthly payments of $800 to Bence; however, she sometimes missed payments and at some point Bence "refinanced" the loan, reducing her payments to $200 per month.

In 2013, Kohrs-Manriques was employed as a bartender at Brown's establishment. On September 20, 2013, Kohrs-Manriques slipped and fell on her left hand and arm while working. Brown did not have workers' compensation

---

[1] Brown and Bence were in a romantic relationship and lived together from 2004 until December 2013 when the relationship ended and Bence moved out of Brown's home.

insurance.[2]    Kohrs-Manriques filed a petition in arbitration for workers' compensation benefits on November 20, 2013; a hearing was held on April 28, 2015; and a May 19, 2015 decision held Kohrs-Manriques was entitled to benefits from Brown.

According to Brown's testimony, Bence approached her in early 2014 and asked her to convey the real estate to him because she was not able to make the payments and he had a potential buyer.   Brown and Bence entered into an agreement for non-judicial voluntary foreclosure on February 19, 2014.   A quit claim deed was executed by Brown to Bence in March 2014 and recorded along with the foreclosure agreement.  Bence entered into a purchase agreement for the sale of the real estate for $40,000 with a third party on April 8, and the sale was completed on July 24.

On July 18, 2016, Kohrs-Manriques filed a petition alleging Brown and Bence engaged in a fraudulent conveyance of the property and seeking to avoid the transfer.  A hearing was held on July 20, 2017, and the district court ruled no fraudulent conveyance occurred.  Kohrs-Manriques appeals.

## II. Standard of Review

Our review of cases tried in equity is de novo. *Prod. Credit Ass'n v. Shirley*, 485 N.W.2d 469, 471 (Iowa 1992).  "Although we give weight to the fact findings of the district court, especially when considering the credibility of witnesses, we are not bound by them." *Id.*

---

[2] Brown testified that she had general liability insurance and believed that would cover "anything that would happen."

### III. Burden-of-Proof Standard

Kohrs-Manriques argues the district court applied the wrong burden-of-proof standard in its ruling. In the ruling, the district court stated, "Considering the factors indicative of a fraudulent transfer, the Court concludes [Kohrs-Manriques] failed to present clear and convincing evidence to establish the conveyance of real estate from [Brown] to [Bence] was a fraudulent conveyance." Kohrs-Manriques asserts the Iowa Code requires a preponderance-of-the-evidence standard to prove fraudulent conveyance rather than by clear and convincing evidence. *See* Iowa Code § 684.5(3) (2017) (providing the creditor making a claim of relief from a fraudulent conveyance "has the burden of proving the elements of the claim for relief by a preponderance of the evidence"). However, the legislature amended Iowa Code chapter 684 in 2016, which included adding section 684.5(3). *See* 2016 Iowa Acts ch. 1040, § 4. The act, approved March 30, 2016, explicitly applies only to transfers made on or after the act's effective date of July 1, 2016. *See id.* § 15; *see also id.* § 3.7(1) (providing all acts "take effect on the first day of July following their passage" unless otherwise indicated). *See id.* Brown conveyed the real estate to Bence in 2014, prior to the act's effective date, so Iowa Code section 684.5(3) does not apply to this transfer.

Since Iowa Code section 684.5(3) is inapplicable, we must look to the law as it existed prior to the enactment of section 684.5(3). In *Benson v. Richardson*, our supreme court held "a party asserting fraud must establish its existence by clear and convincing evidence and demonstrate the fraud has caused him or her prejudice." 537 N.W.2d 748, 756 (Iowa 1995). Thus, clear and convincing evidence is the appropriate burden of proof for claims of fraudulent transfers that

occurred prior to the 2016 legislation. *See id.*; *see also Prod. Credit Ass'n*, 485 N.W.2d at 472–73 (holding that for fraudulent transfers, "fraud is not presumed and must be established by clear and convincing evidence"). Therefore, the district court applied the correct standard. *See Benson*, 537 N.W.2d at 756.

### IV. Fraudulent Transfer[3]

Kohrs-Manriques also argues the district court erred in finding she had not proved a fraudulent conveyance occurred. Generally, a fraudulent conveyance is any "transaction by means of which the owner of real or personal property has sought to place the land or goods beyond the reach of his [or her] creditors, or which operates to the prejudice of their legal or equitable rights." *Prod. Credit Ass'n*, 485 N.W.2d at 472 (quoting *Graham v. Henry*, 456 N.W.2d 364, 366 (Iowa 1990)). When evaluating whether a fraudulent conveyance has occurred, we consider any badges or indicia of fraud: "inadequacy of consideration, insolvency of the transferor, pendency or threat of third-party creditor litigation, secrecy or concealment, departure from the usual method of business, any reservation of benefit to the transferor, and the retention by the debtor of the property." *Benson*, 537 N.W.2d at 756. "The convergence of several badges or indices may support an inference of fraud, which grows in strength as the badges increase in number." *Textron Fin. Corp. v. Kruger*, 545 N.W.2d 880, 883 (Iowa Ct. App. 1996).

---

[3] On appeal, Kohrs-Manriques argues the district court should have found a fraudulent conveyance occurred based on a violation of Iowa Code section 684.4. However, her petition was pled in common law, and we decline to discuss the violation of statute first on appeal. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

Based upon our de novo review, we agree with the district court that Kohrs-Manriques has not shown by clear and convincing evidence that a fraudulent conveyance occurred. First, with regard to the consideration, the district court found "[t]he evidence establishe[d] there was adequate consideration" for the transfer. Brown testified initially she made monthly payments of $800 to Bence, but at some point these payments were refinanced to $200 when she struggled to make payments. After reviewing the record, the district court estimated Brown likely owed over $30,000 to Bence. In Bence's appeal brief, he estimates the principal balance to be over $35,000, considering the evidence that Brown only made nine payments in 2008 and her payments were reduced to $200 at some point, which was not enough to even cover the interest each month. The amortization schedule entered into the record supports that estimate. Additionally, Brown testified her business owed utilities for $1000 to $2000 and back taxes estimated around $10,000. With the tax and utilities liens, the property value was decreased to less than zero in Brown's hands.[4] We agree with the district court that although Brown received no cash payment from the transfer, the adequate consideration was her ability to come out from under a heavy debt load from an asset that held no value in her possession.

Next, the district court found "[t]here was certainly no secrecy or concealment," because the non-judicial voluntary foreclosure agreement and the quit claim deed were filed with the Madison County Recorder. We agree there is

---

[4] As part of the foreclosure action, Bence notified the Iowa Department of Revenue and paid county property taxes in order to eventually secure clear title to convey the property to the third party.

no evidence Bence or Brown attempted to transfer the property in secret. Nonetheless, the district court did find the workers' compensation claim was a pending third-party creditor litigation and Brown was insolvent following the conveyance. However, the district court also found those two factors did not establish a fraudulent conveyance. Based on this evidence, we agree with the district court and find Kohrs-Manriques had not met her burden of proving by clear and convincing evidence that a fraudulent conveyance occurred. *See Benson*, 537 N.W.2d at 756.

## V. Conclusion

We find the district court applied the correct standard and Kohrs-Manriques had not proved by clear and convincing evidence that a fraudulent conveyance occurred.

**AFFIRMED.**